Filed 6/16/23  Melbostad v. Kasolas CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| PAUL H. MELBOSTAD,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>MICHAEL KASOLAS, as Trustee, etc.,<br><br>　　　Defendant and Respondent. | A165361<br><br>(San Francisco City & County Super Ct. No. PTR-20-303941) |

Paul Melbostad, former successor trustee of the Benjamin M. Picetti 2007 Revocable Trust (Trust), petitioned the probate court for settlement and approval of $165,061.82 in fees paid to his law firm for services provided to the Trust.  The court concluded Melbostad established he reasonably incurred $48,081 for legal services performed by him, but the payment of an additional $116,980.82 was improper and must be returned.  In so concluding, the court found Melbostad's reasonable hourly rate was $465 (instead of the $525 rate he claimed), and he spent 103.4 hours providing compensable legal services to the Trust (instead of the 287.6 hours he billed).  Melbostad argues the court abused its discretion.  We disagree and affirm.

1

## BACKGROUND

Debra Dolch was appointed as temporary conservator of Benjamin Picetti's person and estate in 2019. Dolch commenced this action by petitioning for an order to bring the Trust under the supervision of the probate court. She stated there had been "periodic episodes of confusion" in the management and disbursement of Picetti's assets because the conservatorship estate was under court supervision, but the Trust was not.

The probate court granted the petition. It ordered Melbostad to file "his first annual trustee's account of his management of the assets of the Trust for the first year of his tenure, . . . together with a petition for its settlement and approval." Melbostad was also ordered to submit (1) any request "for an award of trustee's compensation for services rendered by him as Successor Trustee" during that time; (2) "all invoices from Goldstein, Gellman, Melbostad, Harris, and McSparran which correspond to any disbursements" from the Trust to the firm during that time; (3) information concerning "such disbursements made and the status of any waiver" made by Melbostad pursuant to Probate Code section 15687 (subsequent undesignated statutory references are to this code); and (4) a request for an order regarding the payment or reasonableness of Melbostad's compensation.

Melbostad filed his petition for settlement and approval of the accounting. It stated, "The total amount of compensation paid to [the firm] for legal services provided by [Melbostad], in his capacity as Trustee of the Trust is $165,061.82 which services are described in detail in time entries recorded contemporaneous with when the services were provided." A few weeks later, Melbostad was replaced by Michael Kasolas as successor trustee.

Melbostad later filed an amended petition that included additional documentation but sought approval of the same amount of legal fees. He

2

again attached invoices with time entries describing services provided by his firm — 287.6 hours of Melbostad's time at a $525 rate. The amended petition asserted the rate was reasonable given Melbostad had "practiced in the San Francisco Probate Court since the early 1980's and that because of the amounts of monthly invoices discounted and time marked 'No Charge,' the effective hourly rate charged is only about $475 per hour." According to an attached schedule, 31.7 hours of Melbostad's time had been written off. While the invoices also reflected services performed by paralegals and other attorneys, Melbostad stated the Trust was either not charged for such time, or "issued a credit for the small amount of time inadvertently charged."

Picetti and his husband filed objections to the amended petition. Among other things, they objected to the compensation claimed by Melbostad's firm, as well as Melbostad's hourly rate and block billing. Picetti asked the court to "closely review the services and charges as a whole."

Melbostad filed a verified supplemental declaration to "clarify and/or address accounting issues." (All capitals omitted.) He declared that, consistent with section 15687, subdivision (b), he had waived trustee compensation for himself and his firm, and he decided "not to seek approval for the right to dual compensation, concluding that compensation for legal services provided by [him] at [his] then current hourly rate of $525 would be sufficient."

Section 15687, subdivision (a) provides, "Notwithstanding any provision of a trust to the contrary, a trustee who is an attorney may receive only (1) the trustee's compensation provided in the trust or otherwise provided in this article or (2) compensation for legal services performed for the trustee, unless the trustee obtains approval for the right to dual

3

compensation . . . ." Subdivision (b) provides, in relevant part, that "no law partnership . . . whose partner, shareholder, or employee is serving as a trustee shall receive any compensation for legal services performed for the trustee unless the trustee waives trustee compensation or unless the trustee obtains approval for the right to dual compensation . . . ."

Melbostad's verified supplemental declaration attached an hourly fee agreement signed by Melbostad and Dolch and dated July 2019, along with a cover letter from Melbostad. The letter stated Melbostad was waiving his "right to trustee compensation" for his services in his capacity as trustee, he agreed his firm would only charge for his "legal services provided for trust administration," and he did not intend to seek approval for compensation "other than hourly fees for legal services at my current hourly rate of $525 based on the actual number of hours provided of legal services for trust administration." The section of the fee agreement entitled "Hourly Rate" began, "As Trustee, [Melbostad] will only charge for legal services for Trust administration on an hourly basis at his current rate of $525 per hour." But the supplemental declaration also stated, if the "percentage discounts made to monthly totals is factored in, the effective rate . . . is only approximately $475 per hour. That has been my 'discounted rate' for clients we have chosen to charge at a reduced rate as a courtesy for a variety of reasons."

Before the hearing on the petition, the probate court informed the parties "its initial review of Melbostad's billing records indicated that the lion's share of the time billed was for trustee services, not legal services performed for the trust, which did not make sense to the court because Melbostad waived trustee fees." The court asked for "guidance regarding the standard for distinguishing between non-compensable trustee services, on the one hand, and compensable legal services performed for the trust, on the

4

other hand, that would allow the court to segregate compensable fees for legal services from non-compensable trustee fees."

Melbostad's submission asserted "the standard for approving the amount of fees charged, and paid by me out of the Trust, to my firm, for my attorney services *only*, is whether the services described in the time entries in my firm Invoices, were attorney services, and, if so, whether the amount charged for those attorney services was in compliance with the rate specified in the Hourly Fee agreement, and was reasonable and appropriate for the benefit of the trust and its sole beneficiary, [Picetti]."

The probate court issued its order on March 17, 2022. It concluded Melbostad had established that "as trustee he reasonably incurred $48,081 for legal services performed by him and his colleagues at [the law firm] for the trust during the accounting period," but payment of the additional $116,980.82 "was not proper" and must be returned to the trust. It reasoned trustee fees were "simply *not* before the court" because Melbostad had elected to receive legal service fees and waive trustee fees. Thus, pursuant to the waiver, time spent performing trustee services was noncompensable.

The probate court explained trustee services generally "include tasks reasonable and appropriate for administering the trust, such as stewardship over funds, budgeting, maintaining records and accounts, accepting receipts, making payments, disbursements and distributions, investigating and researching the status and condition of trust assets, communicating with beneficiaries and other interested parties, and retaining and overseeing agents and advisors." Citing section 15684 — which sets forth a trustee's general entitlement to repayment of expenditures out of the trust property — and *Donahue v. Donahue* (2010) 182 Cal.App.4th 259 (*Donahue*), the court defined compensable legal services to "include tasks where legal judgment or

5

action is appropriate for the sound administration of the trust, whether involving administration, advice, regulatory actions or filings or legal proceedings." The court observed it had "been involved in these proceedings for some time and has carefully reviewed the relevant portions of the docket to understand the type of legal services required for this trust," had "a great amount of experience reviewing trustee fees and fees for legal services," and would "draw upon this experience in identifying compensable legal services in this case." While the blockbilled time entries made such review "difficult," the court found Melbostad spent 103.4 hours providing compensable legal services to the Trust; the "bulk" of the remaining time was spent providing noncompensable trustee services.

The probate court explained the lodestar method applies to attorney fee inquiries, which "multiplies the reasonable number of hours spent by the reasonable hourly rates for service providers." It found the reasonable hourly rate for Melbostad was $465. The court stated that in March 2019, the month before the applicable accounting period, Picetti was billed for services at $400 per hour, but the rate had "jumped" to $525 the next month when Picetti was under conservatorship. The court also acknowledged the $525 hourly rate set forth in the fee agreement, but concluded the rate was "not binding on the court." Citing *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, the court stated it was "well aware of the local market for legal services and prevailing local rates for the legal services involved here." It concluded the $465 hourly rate was supported by Melbostad's experience, as well as his "history as a legal services provider to [Picetti], and the purposes of circumstances of this trust."

DISCUSSION

Melbostad does not challenge the probate court's determination he had elected to receive legal service fees and waived trustee fees for services performed for the Trust. Instead, he argues there are five ways the court abused its discretion in finding his reasonable hourly rate was $465 and that he spent 103.4 hours providing compensable legal services. (*Syers Properties III, Inc. v Rankin* (2014) 226 Cal.App.4th 691, 697 ["The abuse of discretion standard governs our review of the trial court's determination of a reasonable attorney fee"].) None are persuasive.

First, Melbostad contends the probate court failed to apply "all five steps" of the lodestar method in determining whether his requested fees were reasonable. "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group, Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1095.) Melbostad thusly describes the first three steps of the method: determination of reasonable rate, determination of hours reasonably expended, and multiplication of the rate and hours. After reaching this lodestar figure, the court may then adjust it by applying a positive or negative multiplier "based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*Ibid*.) Melbostad argues the court "failed" to take these fourth and fifth steps: consideration and application of a multiplier. What this argument overlooks, however, is that Melbostad did not request any multiplier, and the court was not required to impose one. (*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 98 [party seeking attorney fees bears burden to prove fees it seeks are reasonable]; *Mikhaeilpoor v BMW of North America, LLC* (2020) 48 Cal.App.5th 240, 247 [court is "neither foreclosed

7

from, nor required to, award a multiplier"].) "Rather, applying a multiplier is discretionary." (*Rey v. Madera Unified School Dist.* (2012) 203 Cal.App.4th 1223, 1242.)

Melbostad fails to show the probate court abused its discretion in declining to apply a multiplier here. Factors for applying a multiplier include the novelty, difficulty, and skill required for the litigation, as well as the contingent nature of the fees. (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) This was not a contingency fee case; moreover, contrary to Melbostad's contention, the order shows the court *did* consider these other factors in determining the reasonable rate and compensable hours, including Melbostad's experience, his history as a legal services provider to Picetti, the purposes and circumstances of the Trust, and the services rendered here.

Melbostad also suggests the probate court should have used the "objective factors" in California Rules of Court, rule 7.776 in analyzing the fourth and fifth steps of the lodestar method. That rule lists factors a court *may* consider in determining or approving compensation of a *trustee*. Melbostad provides no authority, nor are we aware of any, to support his position that failure to apply optional factors related to trustee compensation when determining the reasonableness of compensation for legal services is an abuse of discretion. (*Gorman v. Tassajara Development Corp.*, *supra*, 178 Cal.App.4th at p. 98 [party seeking attorney fees bears burden on appeal to prove abuse of discretion].)

Second, Melbostad argues the probate court "misconstrued" and "miscalculated" the charges in the invoices when it concluded Picetti was being charged $400 per hour on the March 2019 invoice, and then $525 on the April 2019 invoice (when under conservatorship). The March 2019 invoice shows Melbostad entered 5.9 hours of time but wrote off 1.1 of those

8

hours (as well as 0.40 hours of paralegal time). Accordingly, Picetti was effectively charged a $400 hourly rate — $2,520 for 6.3 hours of time actually spent. The court did not make any factual error in calculating this effective $400 hourly rate. The April 2019 invoice shows Melbostad entered 9 hours of time (plus 0.50 hours of paralegal time) but wrote off only 0.20 of his hours. Accordingly, Picetti was effectively charged a $497 hourly rate — $4,720 for 9.5 hours of time actually spent. Deducting $100 for the 0.50 hours of paralegal time billed on this invoice, Melbostad's effective hourly rate was $513 — $4,620 for 9 hours of time actually spent. We are not persuaded the $12 discrepancy — between $513 and $525 — in the court's calculation on this invoice shows an abuse of discretion; there were subsequent invoices (November 2019, January 2020, May 2020) where Melbostad did not write off any of his time and charged an hourly rate of $525.

More importantly, Melbostad repeatedly conceded that, "because of the amounts of monthly invoices discounted and time marked 'No Charge,' the effective hourly rate charged is only about $475 per hour," and his $475 rate "has been my 'discounted rate' for clients we have chosen to charge at a reduced rate as a courtesy for a variety of reasons." And, as explained above, Melbostad wrote off his time on invoices to Picetti, resulting in an effective hourly rate well below that amount. The write-offs and "discounted" rate Melbostad provided to clients are not, as he suggests, "completely irrelevant." Under the lodestar method, courts must look at the "actual time expended" and the money charged for such time. (*Mikhaeilpoor v BMW of North America, LLC, supra,* 48 Cal.App.5th at p. 247.) The amount charged by Melbostad's firm here resulted in an hourly rate ranging from approximately $400 to $525. The probate court found Melbostad's reasonable

9

hourly rate was $465 — well within that range. No abuse of discretion appears.

Third, Melbostad argues the probate court should have relied on "objective evidence of publicly available market rate charged by attorneys for legal services in the San Francisco legal services market" instead of the court's own "personal experience" in deciding Melbostad's reasonable hourly rate. He specifically cites the "Laffey Matrix," a billing schedule of attorney rates in the Washington, D.C. area that can be adjusted to comparable billing rates in other areas. (*Syers Properties III, Inc. v Rankin*, *supra*, 226 Cal.App.4th at p. 695.) Melbostad suggests his hourly rate would have been more than $899 under this matrix. But *Syers* made clear the court "was neither *required* to follow the *Laffey* Matrix nor to adopt the rate defense counsel opined was the 'market rate' for services of this type." (*Id*. at p. 702.) Instead, a court "may rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate." (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009.) It may also consider the experience of the attorney requesting fees. (*Ibid*.) The court did both here. As the California Supreme Court has acknowledged, the " 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' " (*Serrano v. Priest*, *supra*, 20 Cal.3d at p. 49.) We are not so convinced.

Fourth, while conceding the hourly rate in the fee agreement was not binding on the probate court, Melbostad argues it should have been afforded "at least some deference in determining the reasonable rate to apply on the petition." Melbostad cites *In re HPL Technologies, Inc. Securities Litigation*

10

(N.D.Cal. 2005) 366 F.Supp.2d 912, but that case does not support his position. It articulates the principle that "the earlier a fee arrangement is concluded between lead plaintiff and lead counsel, the more deference the court should pay to that fee agreement" because "fee agreements set early in the litigation—*ex ante*, so to speak—are more likely than *ex post* fee agreements to be the product of market forces (i.e., competition among counsel proposing to represent the class)." (*Id*. at p. 916.) Even assuming this principle applies in the trustee-attorney context, Melbostad and Dolch entered into the fee agreement in July 2019, *two months into* the accounting period for which Melbostad was seeking approval of fees. We are not persuaded this was an "ex ante" agreement entitled to deference such that it limited the court's discretion to determine $465 was the reasonable hourly rate here. (*Ibid*.)

Fifth, Melbostad argues the determination of compensable legal services was "mistakenly" based on the probate court's own experience and not on "any established legal principle or objective criteria." Not so. The court made clear it had reviewed the invoices to determine which time entries reflected compensable legal services — "tasks where legal judgment or action is appropriate for the sound administration of the trust" — rather than noncompensable trustee services — "tasks reasonable and appropriate for administering the trust," such as "stewardship over funds, budgeting, maintaining records and accounts, accepting receipts, making payments." Melbostad fails to offer either argument or authority disputing these criteria.

Melbostad's repeated citation to *Donahue* is similarly unavailing. In that case, the successor trustee petitioned for more than $5 million in attorney and trustee fees, including reimbursement for fees paid to his 45-member legal team. (*Donahue, supra*, 182 Cal.App.4th at p. 264.) The billing

11

records numbered over 800 pages. (*Id*. at p. 270.) The trial court denied the opposing party's request for discovery and issued an order granting the petition but did not expressly specify the amount of the fee award or explain its ruling. (*Id*. at pp. 265–266, 270.) Given the size and complexity of the request, along with the "pithy explanation" in the order, the appellate court could not determine whether the court had appropriately exercised its discretion, including whether it had "distinguished between fees expended to protect [trustee's] personal interests from those of the trust." (*Id*. at pp. 270, 272.) *Donahue* reversed and remanded, explaining the opposing party could renew her request for discovery, noting the size and complexity of fees at issue "may merit discovery, particularly expert assistance, which cannot be flatly denied simply on the basis of expediency." (*Id*. at p. 276.) It also noted "judges themselves are deemed to be experts on the value of legal services, and may rely on their own experience about reasonable and proper fees, without resort to expert testimony," but their litigation experience "may not extend to many critical aspects of fee awards pertaining to prudent trust administration." (*Ibid*.) *Donahue* concluded: "On remand, we leave it to the sound discretion of the trial court to fashion appropriate discovery regarding proper and reasonable levels of legal services for the benefit of the trust." (*Id*. at pp. 276–277.)

The circumstances in *Donahue* are a far cry from those of Melbostad's petition to approve $165,061.82 in payments for his own billed time. Moreover, *Donahue* made clear that even when there is a level of complexity and size not present here, trial courts retain the discretion to determine whether it can rely on its knowledge and experience. (*Donahue, supra*, 182 Cal.App.4th at pp. 276–277; see also *Marshall v. Webster* (2020) 54 Cal.App.5th 275, 287 [explaining "case law gives trial judges great

12

discretion in using their knowledge and experience" to assess the value of legal services].) Here, the probate court was simply tasked with determining Melbostad's reasonable hourly rate and compensable hours. It reviewed the time entries to determine what hours had been spent performing legal services, instead of trustee services, and thoroughly described its understanding of differences between the two categories. In doing so, the court appropriately exercised its discretion drawing on its "great amount of experience reviewing trustee fees and fees for legal services."

In sum, we conclude the probate court did not abuse its discretion in finding Melbostad's reasonable hourly rate was $465, and that he spent 103.4 hours providing compensable legal services to the Trust. Accordingly, we need not address Melbostad's arguments regarding a new fee determination on remand.

## DISPOSITION

The March 17, 2022 order is affirmed. Kasolas is entitled to recover his costs on appeal.

_____
Rodríguez, J.

WE CONCUR:


_____
Fujisaki, Acting P. J.


_____
Petrou, J.


A165361

14